IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN RADILLO,

Plaintiff,

vs.

FUJIOKA, et al.,

Defendants.

/

CASE NO. CV-F-04-5229 AWI DLB P

FINDINGS AND RECOMMENDATIONS RE CROSS MOTIONS FOR SUMMARY JUDGMENT

[Doc. 30, 31]

I. Procedural History

Plaintiff Juan Radillo ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint filed January 26, 2004, against defendants Fujioka, Fehlman, Andrews, Ortiz, Yamamoto, Scribner and Grannis ("defendants") for violation of his rights under the First Amendment based on the denial and destruction of a catalog pursuant to California Department of Corrections and Rehabilitation (CDCR) regulations and for violation of his rights under the Fourteenth Amendment for failing to provide plaintiff with written notice of the disallowance of his catalog.

On December 7, 2005, plaintiff filed a motion for summary judgment and on December 28, 2005, defendants filed an opposition and cross motion for summary judgment. Plaintiff filed a reply and

opposition to defendants' motion on January 19, 2006.

II. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. Id. This requires plaintiff to establish beyond controversy every essential element of his retaliation claims. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to defendants' motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v.

Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Undisputed Facts

The following facts were submitted by plaintiff and undisputed by defendants in their opposition and cross motion for summary judgment:

1. On February 14, 2003, Defendant Fujioka issued Plaintiff material (magazine) that was mailed from an outside vendor known as "Bud Plant Comic Art." Complaint, ¶ 10.

2. "Bud Plant Comic Art" also mailed Plaintiff a catalog of comic and art books. Defendant Fujioka refused to give the catalog to plaintiff pursuant to Title 15 California Code of Regulations (CCR) 3006(c)(11). Complaint, ¶ 11.

3. Defendant Fujioka then told plaintiff that he had to sign a "trust withdrawal" to send the catalog home or it would be disposed of. Complaint, ¶ 12.

4. Plaintiff refused to sign the "trust withdrawal" and expressed to Fujioka that he would like to appeal and request that the catalog be held pending appeal, to which Fujioka stated that his only option was to sign the "trust withdrawal." Complaint, ¶ 13.

5. The following day, plaintiff submitted a CDC 602 Appeal to Fujioka challenging the denial of the catalog, the lack of proper notice and he requested that the catalog be held pending appeal. Complaint, ¶ 14.

6. On February 20, 2003, Fujioka denied the appeal at the Informal Level pursuant to CCR 3006(c)(11) and Operational Procedure (OP) 806. Fujioka further informed plaintiff that since he did not sign the "trust withdrawal" the catalog would be disposed of. Complaint, ¶ 15.

7. Plaintiff was not provided written notice by the Warden giving him the opportunity to be heard on his appeal prior to his catalog being disposed of as guaranteed by CCR 3147 (a)(5)(A) and which would have also required the catalog to be held pending appeal/administrative remedies.

Complaint, ¶ 16.

8. On March 7, 2003, plaintiff resubmitted his appeal to the First Level, arguing that the catalog did not fall within the language of CCR 3006(c)(11) and that Fujioka violated his First Amendment and Due Process rights. Complaint, ¶ 18.

9. On March 22, 2003, defendants Fehlman, Andrews and Ortiz denied plaintiff's appeal at the First level stating, "Correctional Officer Fujioka refused to issue you the catalog and offered you the appropriate manner by which to either send it home or have it disposed per OP 22 and 806, catalogs are not listed as approved property. CCR Title 15 Section 3006(c)(11) defines catalogs as contraband. Based on this your appeal is denied at the First Level." Complaint, ¶ 19.

10. On April 6, 2003, plaintiff resubmitted his appeal to the Second Level contending that the decision by the First Level was unconstitutional. Complaint, ¶ 20.

11. On April 25, 2003, defendant Yamamoto denied plaintiff's appeal to the Second Level stating, "The appellant contends that Facility 4B property officer arbitrarily and inappropriately rejected the appellants catalog . . . The appellant requests that he be issued his catalog . . Review of the informal and the First Level responses finds that the appellant was afforded an appropriate response." Complaint, ¶ 21.

12. On June 4, 2003, plaintiff resubmitted his appeal to the third and final level of administrative review. Plaintiff alleged that his First Amendment and Due Process rights were violated by defendants. Complaint, ¶ 22.

13. On September 5, 2003, defendant Grannis partially granted plaintiff's appeal, finding that plaintiff was entitled to notice via CDC 1819 per CCR 3147(a)(5)(B) of the disallowed catalog but that the catalog was no longer available to provide the necessary information for completion. Grannis further held the institution was in compliance with CCR 3006(c)(11) in disallowing the catalog.

IV. Discussion

A. Cross Motions for Summary Judgment - First Amendment Claim

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed

under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff argues he is entitled to judgment as a matter of law on his First Amendment Claim because his catalog was not disallowed for security reasons, but merely because it was a "catalog" which inmates are prohibited from possessing. Plaintiff argues defendants disallowed his catalog without examining it to determine if it presented a security threat. Plaintiff argues that defendants' reliance on CCR 3006(c)(11) as a complete ban on all catalogs was arbitrary, abusive and unconstitutional

Section 3006 governs contraband and, in relevant part, disallows inmates from possessing any matter containing or concerning matter of a character tending to incite violence or physical harm to any person; or which depicts, displays, or describes penetration of the vagina or anus, or contact between the mouth and the genitals; or which depicts, displays, or describes an excretory function including semen. Cal. Code Regs. tit 15, § 3006(c).

In Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005), the Ninth Circuit held that a CDCR ban on an inmate's receipt of non-subscription bulk mail and catalogs violated the First Amendment. Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005). The Court also ruled that Department employees were entitled to qualified immunity regarding the Plaintiff's First Amendment claim. Id.

Defendants do not dispute that Fujioka denied plaintiff a catalog that he was sent along with two magazines. Accordingly, plaintiff is entitled to summary adjudication on his First Amendment Claim.

Defendants contend that although he was given the magazines, he was denied the catalog pursuant to a state regulation providing that catalogs devoted to purely commercial concerns and containing no educational, political, literary, artistic, or scientific value are not allowable property.

Cal.Code Regs., tit.15, § 3006(c)(11). Defendants therefore argue they are entitled to qualified immunity as to plaintiff's First Amendment claim.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In determining whether the right was clearly established, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (*internal quotations and citation omitted*). In resolving these issues, the Court must view the evidence in the light most favorable to Plaintiff and resolve all material factual disputes in favor of Plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants concede that based on Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005), the banning of plaintiff's catalog violated his constituional rights. However, defendants argue they are entitled to qualified immunity because plaintiff's rights were not clearly established at the time of the injury, February 14, 2003.

After determining that the ban on non-subscription bulk mail and catalogs was not rationally related to a legitimate penological interest and was therefore unconstitutional, the Ninth Circuit concluded that prison officials were entitled to qualified immunity because they could have easily and reasonably understood the Court's holding in Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001) concerning a similar ban on subscription for-profit bulk mail, to allow a ban on non-subscription bulk mail and catalogs. Prison Legal News v. Lehman, 397 F.3d 692, 702 (9th Cir. 2005). The Court found the following paragraph from Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001) sufficient to show how prison officials could have thought a ban on non-subscription bulk mail and catalogs was constitutional:

> Moreover, prisons can and have adopted policies permitting prisoners to receive for-profit, commercial publications, while at the same time, prohibiting prisoners from receiving unsolicited junk mail. For example, the California Department of Corrections ("CDC") adopted a regulation that prohibits prisoners from 'possessing ... catalogs, advertisements, brochures, and materials whose primary purpose is to sell a product(s) or service(s) and when taken as a whole, lacks serious literary, artistic, political, educational, or scientific value.' 15 Cal.Admin. Code § 30006(c)(11). Unlike the Oregon regulation, the CDC regulation is specifically tailored to permit inmates to receive for-profit, subscription publications such as The New York Times, while at the same time prohibiting the receipt of unsolicited junk mail.

Prison Legal News, 397 F.3d at 702. The Court held that prison officials could have read the above paragraph and "reasonably (though incorrectly, as it turns out) believed that like the CDC[R], they could ban catalogs and non-subscription bulk mail while allowing inmates to receive non-profit and for-profit subscription bulk mail." Id. Defendants contend based on these controlling authorities and the fact that it was not clearly decided until February 1, 2005 that inmates have a First Amendment right to receive catalogs, defendants are entitled to qualified immunity.

Plaintiff argues that at the time they disallowed his catalog, defendants knew that the practice of disallowing catalogs without examination was unlawful. Plaintiff argues defendants did not make a mistake but rather knowingly violated his First Amendment Rights.

As noted above, Defendants concede that a constitutional violation occurred but argue that the actions of the officials are immune from judgment because the law was not clearly established at the time the violation occurred. Other than his conclusory statement, Plaintiff provides neither argument or evidence to the contrary. Plaintiff's claim arose after the Ninth Circuit issued its decision in Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001). The Ninth Circuit's finding that prison officials could have and did reasonably read Morrison to allow a ban on non-subscription bulk mail and catalogs supports a finding of immunity in this case. Accordingly, Plaintiff is entitled to summary adjudication on the First Amendment claim. However, Defendants are entitled to qualified immunity and therefore entitled to summary judgment on plaintiff's First Amendment claim.

B. Cross Motions for Summary Judgment - Due Process Claim

Plaintiff claims that he was denied due process because he was not given written notice of the denial of his catalog pursuant to a state form. Defendants concede that plaintiff was not given notice on the CDC form but note that plaintiff admits that he was told that he was not being allowed to have the

catalog. *See* Facts 2-4. Defendant therefore argues, plaintiff was not denied notice of the denial of his catalog.

An inmate has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities. Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999); Procunier v. Martinez, 416 U.S. 396 (1974). In Prison Legal News v. Lehman, 397 F.3d 692, 701 (9th Cir. 2005), the Ninth Circuit considered the issue of whether there was a due process violation in that the inmates in that case were not notified that they were being denied catalogs and bulk mail. The Court held that the inmates' due process rights had been violated.

Defendants argue this case is distinguishable from Prison Legal News v. Lehman because plaintiff admittedly received notice that he was not going to get the catalog. The Court agrees. Plaintiff acknowledges that defendant Fujioka told him he was not going to get the catalog and gave him a trust withdrawal slip so that plaintiff could authorize disposal of the catalog. Plaintiff was able to appeal the decision. He was not denied due process merely because he did not receive a CDC form notice of the confiscation of his catalog.

Moreover, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Here, the failure to provide the CDC form notice to plaintiff was unauthorized as it was not in compliance with CCR 3147(a)(5)(B) as found by defendant Grannis in the Director Level Decision. *See* Attachment to Statement of Undisputed Facts by Defendants. Indeed, plaintiff acknowledges that defendant Grannis "agreed with plaintiff" at the Director's level of review regarding the lack of notice on the CDC form. *See* Plaintiff's motion for summary judgment, p. 7: 13-15. Because the failure to provide the CDC notice to plaintiff was unauthorized and contrary to prison policy, plaintiff does not state a due process claim under § 1983 as there is a meaningful postdeprivation remedy for the loss, namely a state law action for conversion.

V. Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that plaintiff's motion for summary judgment, filed December 7, 2005 be GRANTED IN PART and DENIED IN PART and defendants' cross motion for summary judgment, filed December 28, 2005, be GRANTED as follows:

1. On the First Amendment Claim, Plaintiff be granted summary adjudication and Defendants be granted Summary Judgment based on Qualified Immunity;

2. On the Due Process Claim, Plaintiff's motion for summary judgment be DENIED and Defendants' motion for summary judgment be GRANTED, thereby concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: September 7, 2006** **/s/ Dennis L. Beck**
3b142a UNITED STATES MAGISTRATE JUDGE